In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 13-1742

CORINA BASS,

*Plaintiff-Appellant,*

*v.*

JOLIET PUBLIC SCHOOL DISTRICT NO. 86,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 8136 — **John W. Darrah**, *Judge.*

———————————

ARGUED NOVEMBER 6, 2013 — DECIDED MARCH 26, 2014

———————————

Before WOOD, *Chief Judge*, and FLAUM and TINDER, *Circuit Judges*.

WOOD, *Chief Judge*. For 10 years, Corina Bass worked as a custodian for Joliet Public School District No. 86. She lost her job in 2011. Believing that she was the victim of sex discrimination, she brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment in the District's favor, and Bass now appeals. We have taken a fresh look at the record (so-

called *de novo* review), but we conclude that the district court was correct: there are no genuine issues of material fact, and the District is entitled to judgment as a matter of law. We therefore affirm.

**I**

Bass worked for the District as a custodian from May 2001 until February 2, 2011. In April 2002, she was assigned to work the 2:00–10:30 pm shift at Cunningham Elementary School. At the time Cunningham was a single-floor building but in 2003 a second story was added on. The additional space was more than one employee could handle, and so the District assigned Lewis Pickens, a male, to Cunningham to work the same shift as Bass; Pickens was responsible for cleaning the new second floor. The second floor included 19 classrooms and the library, while the first floor had 11 classrooms and the gym. The principal of Cunningham, Maria Arroyo, was Bass's direct supervisor from November 2008 until she was fired.

During the 2008–09 school year, the District hired an outside vendor, Pike Systems, to conduct a time-study of custodial duties at 11 of its schools. The study was supposed to shed light on how long different custodial tasks should take and to recommend measures that would improve efficiency. At Cunningham, Pike's work revealed that the tasks associated with the second floor took more time to complete than one shift permitted, while those for the first floor could be finished in less time than one shift. As a result, Pike recommended that the restrooms on the second floor be reassigned to the custodian responsible for the first floor. While Bass was on leave, the District had the substitute first-floor custodian try out the new arrangement (that is, clean both the en-

tire first floor and the second floor restrooms). She was able to do so during her shift. As a result, the District approved the reassignment of the second-floor restrooms to the first floor custodian, Bass. The Pike study also resulted in reassignments at other schools, with seven male custodians assigned additional duties. Neither Bass nor the District tells us how many women other than Bass were given additional work.

On December 10, 2008, a meeting was held at Cunningham to discuss the new system with Bass, Pickens, and the Cunningham building engineer, Charles Hicks. At the meeting, Bass complained that the new arrangement was not fair and resulted in too much work for her.

Around the same time, Bass began having performance issues, which led to two suspensions without pay. Bass did not contest these suspensions at the time; she admitted that she had failed to complete all of her cleaning duties. After she completed her suspensions her performance improved significantly, and she was rated "exceeds standards" by Arroyo at the end of the 2009–10 school year. Bass explains this improvement as the result of efforts beyond the call of duty: she says that she stopped taking routine breaks in order to complete all her work. The reason why her performance improved, however, is immaterial, because performance was not the basis for her termination—attendance was.

Under the collective bargaining agreement (CBA) to which Bass was subject, she was permitted a one-time disability leave for up to twelve months, in addition to all other accrued sick leave (which had to be exhausted first). The CBA provides that employees who are absent after exhausting all leave are subject to disciplinary action, up to and in-

cluding termination. Prior to 2010, Bass had taken two ex-
tended leaves of absence, including two disability leaves of
nearly a year, one from March 14, 2005, to January 27, 2006,
and another from September 3, 2007, to July 9, 2008. These
absences alone exceeded the amount of leave to which Bass
was entitled under the CBA.

Unfortunately, Bass injured her back on August 12, 2010,
and again took family medical leave. The District told Bass
that since she already had used two long-term disability
leaves and all her other accrued leave, she would have no
more available leave as of November 3, 2010, and she would
be fired if she failed to return to work. Bass got a doctor's
note indicating that she could return to work on light duty,
but the District had a longstanding policy of not having
light-duty assignments for custodians. Bass did return to
work on November 4, 2010, apparently without restriction.
Twelve days later, she injured her back again and was out for
2.5 days. At that time, she had only one sick day available,
and so this new absence resulted in 1.5 days of unexcused
and unpaid time off; based on that incident, the District is-
sued a written reprimand to her. She returned to work on
November 19, 2010. On January 3, 2011, Bass again did not
report to work. She provided a doctor's note dated January 4
stating that she could not work because of severe back pain;
the note estimated that she would need to be absent for at
least a week. The next day, Bass was told that her available
leave would be exhausted on January 5, 2011, and that she
would be fired if she did not report to work. Nonetheless,
she did not return to work; instead, she brought another
doctor's note dated January 7 indicating that she was unable
to work. This note provided no anticipated return date.

Even then, the District did not fire Bass immediately, though it had the right to do so under the CBA. Instead, it held a meeting with Bass on January 13, 2011, to discuss her unexcused absences. Bass proffered a doctor's note dated January 12, which stated that she could return to work with lifting restrictions. This was not good enough, however, given the District policy precluding light-duty jobs for custodians. When asked when she would be able to return without restrictions, Bass did not reply. She was fired on February 2, 2011, on the ground of job abandonment and failure to return to work after exhausting all available leave.

Bass was not the first custodian to be fired for this reason. Three male custodians lost their jobs between 2008 and 2011 on the same ground. Nonetheless, on May 24, 2011, Bass filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging sex discrimination. She received a Notice of Right to Sue on August 17, 2011, and moved ahead with this lawsuit. After the close of discovery, the District moved for summary judgment and, after some additional briefing, the district court granted that motion.

## II

Title VII provides that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice, in deferral states like Illinois. 42 U.S.C. § 2000e-5(e)(1); see *Mohasco Corp. v. Silver,* 447 U.S. 807 (1980); *Roney v. Ill. Dept. of Transp.,* 474 F.3d 455, 460 (7th Cir. 2007). An "unlawful employment practice" includes discrete acts, such as firing. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). If a plaintiff does not file a charge concerning a discrete act within the 300-day window, her claim is time-barred and she may not recover.

See *Roney*, 474 F.3d at 460. Discrete acts stand in contrast to the situation that is usually known as a "continuing violation" or more precisely in this case, a "cumulative violation." See *Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir. 2013) (Easterbrook, C.J., concurring). Cumulative violations arise when it is not immediately apparent that the law is being violated. Accordingly, a plaintiff may delay suing "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008); see also *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997) ("[D]uration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, into an actionable alteration in the plaintiff's working conditions.") (internal citations omitted). If a discrete wrongful act causes continuing harm, in contrast, then the 300-day period runs from the date of that event; it does not restart with each new day the harm is experienced. See *Morgan*, 536 U.S. at 110–15.

The need for a timely charge is Bass's first problem. She alleges that the December 2008 reassignment of the restrooms and the February 2009 suspensions were discriminatory actions that must be viewed as part of a continuing violation. The district court, however, correctly recognized that any complaint about those incidents was time-barred. Reassignment of duties and suspensions are discrete acts. Nothing about their duration or repetition changes their nature in such a way that a cumulative violation could arise. Because these events took place outside the 300-day window, they are not actionable. On appeal, Bass has not offered any reason why the district court was wrong, nor can we think of any.

Moreover, even if (counterfactually) the district court were incorrect about the time-bar, the District presented a legitimate non-discriminatory reason for these two actions. Its reassignments were based on the time study showing that it would be more efficient to give the custodian responsible for the first floor the second-floor restroom duty. Bass offers no reason why we should find that reason to be pretextual. We note, however, that the District also argues, citing *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 918 n.7 (N.D. Ill. 2001), *aff'd*, 323 F.3d 524 (7th Cir. 2003), that Bass's sex discrimination claim is "dubious at best" because her supervisor was a woman. We are not sure why it did so, since this court's decision in *Haywood* expressly rejected that very argument. See 323 F.3d at 530. Indeed, so has the Supreme Court. See *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) ("[W]e conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII … ."). Nonetheless, we repeat for the sake of emphasis that there is no legal presumption that people of a certain group never discriminate against other members of that group.

Finally, Bass did not challenge the district court's finding that neither the 2008 assignment of the second-floor restrooms nor her written reprimands qualified as an adverse employment action. She has therefore forfeited any argument based on either of those incidents. (For what it is worth, the law would have been against her in any event.)

Bass did file her EEOC charge in time to contest the loss of her job, and so we move on to the heart of her appeal. She argues that she was fired because she is a woman. Under current law Bass may prove her claim through either the

"direct" or "indirect" method of proof, although we have observed that when all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination. See *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("By now … the various tests that we insist lawyers use have lost their utility … . In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason.").

While Bass argues her claim survives under either the indirect or direct methods, she fails on both. Bass has presented no—literally no—evidence that her firing was for a prohibited reason.

Under the direct method, the plaintiff must present either direct or circumstantial evidence of discrimination in her opposition to summary judgment. See *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). Regardless of the type of evidence presented, the direct method is used when that evidence would permit the trier of fact to find that unlawful discrimination caused the adverse job action. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Bass, however, offered no evidence that would allow a trier of fact to find that sex discrimination lay behind the District's action. Speculation is no substitute for evidence at the summary judgment stage. In that connection, Bass seems to have misunderstood her burden: her brief states that "[n]o real

evidence has been submitted which would *preclude* a jury finding of discrimination on the part of the defendant. No evidence has been presented to show that the discipline and termination of Bass caused her to be treated the same as other male employees." (Emphasis added.) This statement may be true, but it misstates the test in discrimination cases. It is *Bass*, the party with the burden of proof, who must present some evidence that would allow a rational jury to infer intentional discrimination by the District. She did not do so. Instead, the District went the extra mile and provided valid reasons for its decision to terminate her employment. Under the CBA, Bass was entitled to a certain amount of leave. She exceeded that allowance by a significant margin. She was warned, meetings were held, she did not return to work, and she was fired. Three men were also fired for the same reason between 2008 and 2011. No trier of fact could find discrimination on that record.

Bass also relies on the indirect method, using the familiar *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, Bass needed first to establish a *prima facie* case of discrimination. To do so she had to show (1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she suffered an adverse employment action; and (4) that the employer treated similarly situated employees outside of the protected class more favorably. See *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004). Elements (1) and (3) are here (and often are) easily satisfied—Bass is a woman and she was fired. But Bass can show neither that she was performing her job satisfactorily nor that the District treated males more favorably. Bass repeatedly missed work. She received written reprimands for her unexcused absences, in accord-

ance with her CBA. Although she eventually returned to work, it was not for long. She failed to report to work again on January 3, 2011, at a time when she had exhausted all available leave. Her violations of the District's attendance guidelines demonstrate that she was not meeting the District's legitimate expectations. See *Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001) ("[Plaintiff] violated the company's work attendance guidelines on no less than eight occasions … . All these facts show that [plaintiff] was not meeting the legitimate expectations of [his employer]."). Apart from an unsupported assertion in her brief that "similarly situated males were treated differently," she offers nothing on element four. Without at least a name to test, the district court had no choice but to grant summary judgment for the District.[1]

*********************

We AFFIRM the district court's order granting defendants summary judgment. Plaintiff's attorney, Steven H. Jesser, is ordered to show cause why he should not be sanctioned for filing a frivolous appeal. See FED. R. APP. P. 38. He has 14 days to file a response. We also direct the clerk of this court to transmit a copy of this opinion to Illinois's Attorney Regis-

---

[1] In the final sentence of both her opening and reply briefs, Bass briefly contends that the district court's imposition of costs against her should be vacated. Without any further analysis or citation to authority, we find this argument waived. See *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

tration and Disciplinary Commission for any action it deems appropriate.