In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1870

KURT FUQUA,

*Plaintiff-Appellant,*

*v.*

SVOX AG, SVOX USA, INC., NUANCE
COMMUNICATIONS, INC., VOLKER
JANTZEN, EUGEN STERMETZ, MARTIN
REBER, ERIC LEHMANN, AND THOMAS
SOSEMAN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-05376 — **Ronald A. Guzmán**, *Judge.*

ARGUED JANUARY 21, 2014 — DECIDED MAY 16, 2014

Before KANNE and SYKES, *Circuit Judges*, and GILBERT,
*District Judge.*[*]

---

[*] Of the Southern District of Illinois, sitting by designation.

KANNE, *Circuit Judge.* Kurt Fuqua sued his former employer alleging retaliation for whistleblowing regarding "covered funds" in violation of the American Reinvestment and Recovery Act of 2009. Fuqua also asserted a claim under state law. The district court granted the defendants' 12(b)(6) motion to dismiss for failure to state a federal claim and declined to exercise supplemental jurisdiction over the state claims. For the following reasons, we affirm.

## I. BACKGROUND

Defendant SVOX USA, Inc. is a wholly owned subsidiary of SVOX AG, a Swiss company (collectively "SVOX"). Both companies were acquired by defendant Nuance Communications, Inc. ("Nuance") after Fuqua's termination.

Fuqua is a computational linguist who was hired by SVOX on January 28, 2009 to help market linguistic products. Soon thereafter, SVOX asked Fuqua to travel to Zurich, Switzerland to work on a short term project. As part of the agreement to travel to Zurich, SVOX agreed to pay for Fuqua's monthly transit passes in the city. The cost of these monthly passes was offset by a tax credit to SVOX of $230.00 per month, which was taken against payroll taxes.

On June 22, 2009, SVOX approached Fuqua with a new employment contract that contained an inventions assignment clause. The clause required Fuqua to disclose and assign to SVOX intellectual property that the employee had made, conceived, or developed in the past. The new agreement also required assignment of his rights to patents, copyrights, trademarks, trade secrets, and royalties to SVOX. Fuqua believed that the disclosure required by the new agreement

would violate various state and federal laws and refused to sign the contract. He made his objections to the new contract known to various SVOX officers.

SVOX and Fuqua continued discussions regarding the new contract, but Fuqua refused to sign anything containing the inventions assignment clause. Finally, on October 22, 2009, five months after the initial contract proposal, SVOX terminated Fuqua's employment.

After his termination, Fuqua filed a complaint with the Office of Inspector General of the Department of Defense ("OIG"). The complaint alleged that SVOX's termination of Fuqua violated section 1553 of the American Recovery and Reinvestment Act of 2009 ("ARRA"), which prohibits reprisals for disclosures of wrongdoing relating to covered funds under the act. The OIG performed a comprehensive inquiry into the allegations and found that there was "insufficient evidence to warrant further inquiry into your reprisal allegation and have closed your case … . We found that SVOX did not receive Recovery Act funds ('covered funds'), and for Section 1553 to apply, the nonfederal employer must be the recipient of covered funds." The OIG also found that Fuqua's complaint did not relate to covered funds and declined to investigate further.

Fuqua then filed a complaint in the district court, alleging violations of both section 1553 of the ARRA and state law. SVOX filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which was granted. The district court found, like the OIG, that SVOX did not receive covered funds as defined by the ARRA and was therefore not liable under the

act. Furthermore, the court held that Fuqua's allegations were not related to covered funds as required by the ARRA. The district court also found that, even if his claim were actionable, Fuqua nonetheless failed to exhaust his administrative remedies by filing with the wrong administrative agency—the Department of Defense—when the complaint should have been filed with the Commerce or Treasury Departments, which govern the National Institute of Standards and Technology ("NIST") and the Internal Revenue Service, respectively. Finally, following the dismissal of the only federal claim, the court declined to exercise supplemental jurisdiction over the remaining state claims.

## II. ANALYSIS

We review a district court's granting of a 12(b)(6) motion to dismiss *de novo*. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). In order to survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In resolving a 12(b)(6) motion, we take all well-pled facts as true, but after assuming the veracity of all these facts, the court must assess whether those factual assertions "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Fuqua's complaint centers around the whistleblowing provisions contained in section 1553 of the ARRA. Under that section, an "employee of any non-Federal employer receiving covered funds may not be discharged, demoted, or otherwise discriminated against" for disclosing information relating to the abuse of covered funds. ARRA, Pub. L. 111-5, § 1553(a)

(2009). Covered funds are defined as any contract, grant, or other payment the federal government provides to a non-federal employer that is at least partially made available by the ARRA. *Id*. § 1553(g)(2). Fuqua contends that SVOX received covered funds—and is therefore liable for retaliation under section 1553—in the form of licensing data through NIST as well as payments made under the Consolidated Omnibus Budget Recovery Act (COBRA), 29 U.S.C. §§ 1161 *et seq*[1].

*A. NIST Contracts*

Fuqua first claims that he, SVOX, and Nuance have each received covered funds by licensing government-sponsored data from NIST competitions that were sponsored with money provided under the ARRA. Fuqua vaguely asserts that both SVOX and Nuance received covered funds by participating in the competitions, but fails to identify any money that would qualify under the definition provided in the ARRA section 1553(g)(2). In his complaint, Fuqua does not allege that SVOX or Nuance received "funds … appropriated or otherwise made available by [the ARRA]." § 1553(g)(2). Fuqua's complaint "must actually *suggest* that [he] has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted). Simply reciting the elements of a cause of action is insufficient

---

[1] Fuqua does not challenge the district court's finding that the monthly public transit passes and accelerated depreciation tax credits do not serve as covered funds under the ARRA; it is therefore forfeited. *See Bass v. Joliet Public School Dist. No. 86*, No. 13-1742, 2014 WL 1229578 at*4 (7th Cir. Mar. 26, 2014).

to state a claim for relief. *Iqbal*, 556 U.S. at 679. Fuqua has failed to plead how any of the NIST licensing data received by SVOX or Nuance constituted covered funds as defined by the ARRA. The fact that a party licensed data from a third party, *i.e.* NIST, that received covered funds does not qualify as receiving a "contract, grant, or other payment" from the federal government. ARRA § 1553(g)(2).

Moreover, even if the NIST licensing data were somehow considered covered funds under the ARRA, Fuqua's complaint fails to provide a nexus between his alleged disclosures and the misuse of these funds as required under section 1553. *See id*. § 1553(a) (protection for employee who informs the federal government of inappropriate use of "covered funds"). Fuqua refused to sign the new employment contract with SVOX—which required assignment of his licensing data—because he felt that disclosing the linguistic data he licensed from NIST would violate the confidentiality agreement that he signed with NIST. In other words, Fuqua was worried that his *own* licensing agreement would be compromised should he sign the new employment contract with SVOX. As noted already, the ARRA only protects an employee who discloses information regarding an abuse of covered funds received from the government by a "non-Federal employer." *Id*.; *see Williams v. N.Y. City Dep't of Educ.*, No. 12 Civ. 8518, 2013 WL 5226564 at *15 (S.D.N.Y. Sept. 17, 2013) (Section 1553 "permits suit only where a recipient of grants under the ARRA … retaliates against an individual for disclosing to the authorities a violation 'relating to covered funds'—that is, a violation relating to funds disbursed pursuant to the statute." (citing ARRA section 1553(a)(5)). In this

case, Fuqua—not SVOX or Nuance—received the data. Thus, the protections provided in the ARRA do not apply.

*B. COBRA Payments*

Fuqua also alleges that Nuance was the recipient of COBRA payments that qualified as covered funds since they were made available under the ARRA. Yet these COBRA payments were not the subject of Fuqua's allegedly protected disclosures; they therefore cannot qualify as "covered funds" entitling Fuqua to whistleblower protection under the ARRA. *See* ARRA § 1553(a) (the purpose of section 1553 is to protect disclosures "relating to covered funds"). While Fuqua states in his complaint that Nuance received COBRA payments, he fails to allege any mismanagement with respect to these payments. Accordingly, he fails to state a ground for which relief might be granted under the ARRA.

*C. State Law Claims*

As the only federal claim in this case has been dismissed, the district court properly relinquished supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3).")

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to grant the defendants' motion to dismiss and its

decision to decline supplemental jurisdiction on the remaining state law claims.