In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1481

JULIA HUTT,

*Plaintiff-Appellant*,

*v.*

ABBVIE PRODUCTS LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:10cv204 JVB — **Joseph S. Van Bokkelen**, *Judge*.

ARGUED DECEMBER 4, 2013 — DECIDED JULY 7, 2014

Before FLAUM, EASTERBROOK, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Plaintiff-Appellant Julia Hutt appeals the district court's grant of summary judgment for Defendant-Appellee Solvay Pharmaceuticals[1] on her Age Dis-

---

[1] Solvay Pharmaceuticals, Inc. and its successor in interest, Abbott Products, Inc., are now known as AbbVie Products, LLC. Throughout this opinion we refer to the Defendant-Appellee as Solvay Pharmaceuticals,

crimination in Employment Act ("ADEA") retaliation and discrimination claims, and her state law claim asserting a violation of the Indiana Wage Payment Statute. We affirm the judgment of the district court.

## I

Hutt joined Solvay Pharmaceuticals as a sales representative in January 2001. She worked until 2007 with a supervisor who had recruited her to Solvay from a different company. Despite earning satisfactory ratings in most categories, the supervisor repeatedly informed Hutt that she needed to improve her punctuality and consistency in submitting internal reports. For example, her 2004 performance evaluation notes that Hutt's "lack of organization and administration problems are becoming the major focus of [her] performance." When her first supervisor retired, Brian Lozen was appointed the new Indianapolis sales district manager by Jeff Westfall, himself a newly-appointed regional manager. Hutt's lawsuit concerns three years of work under Lozen and Westfall—from 2008 to 2011—so we detail the course of her employment over those years. Because we are reviewing the grant of summary judgment against Hutt, we construe the facts in the light most favorable to her. *See Andrews v. CBOSCS West, Inc.*, 743 F.3d 230, 232 (7th Cir. 2014).

### A. HR Call and Informal Warning

One of Lozen's first acts as the district manager was to ask for his employees' dates of birth. It appears that from the early days of Lozen's tenure, he and Hutt had friction. When

the name of the predecessor company and the entity that employed Hutt, for consistency with the district court's opinion.

several types of new software for internal accounting of expense reports and time off were introduced, Hutt requested training assistance for the software, but did not receive a response from Lozen. She did not complete those reports. On March 19, 2008—three months into Lozen's tenure—John, the Plaintiff-Appellant's husband, called Solvay's human resources department to voice his concerns about the Plaintiff-Appellant's stress and depression. He stated that part of the problem was the way that Lozen and Westfall treated her. Two days after John's HR call, Lozen phoned Hutt at her home and spoke at some length—38 minutes—to strongly express his displeasure with her complaint to HR. A week after the call to HR, Lozen and Westfall placed Hutt on an Informal Warning Status and issued a Performance Improvement Plan ("PIP"). The PIP required Hutt to finish her uncompleted administrative tasks within the next five days, by March 31, when the company's national sales meeting was scheduled to start. Lozen approved a computer trainer to help Hutt with the new software the same day Hutt was placed on warning status. Hutt completed some, but not all, of her incomplete tasks by the time the national sales meeting began.

### B. 2008 National Sales Meeting and Formal Warning

By all accounts, the 2008 national sales meeting was eventful. At least twice, Lozen forcibly grabbed Hutt's arm to stop her from leaving a room. Hutt also states that five or seven drunken male employees harassed and groped her, including one man who touched her face and leg, and burned her skirt with his cigarette, though she did not report this incident. Solvay counters that Hutt behaved inappropri-

ately at the national sales meeting. At some point, Hutt locked a colleague out on a hotel patio as a practical joke. Two sales representatives informed Lozen that Hutt had stated that Lozen and Westfall had engaged in a homosexual relationship, that Hutt planned to get Lozen fired and sue Solvay to make money, and that she was soliciting collaboration from her colleagues to assist in her efforts. Unrelated to the national meeting, several other employees complained to Westfall and Lozen about Hutt's unprofessional and inappropriate behavior. Lozen received emails in which a sister company's sales representatives alleged Hutt was providing too many samples to doctors, arriving late to lunches or cancelling appointments, scheduling appointments with physicians under the names of the other company's sales representatives, and making unprofessional statements to customers.

On April 28, 2008, Westfall and Lozen placed Hutt on a Formal Record of Warning and another PIP. They stated that Hutt had still not complied with all of the requirements of the March PIP because several reports were still uncompleted, and that this highlighted her administrative deficiencies. They also cited her unprofessional conduct, her disruptive behavior at the Orlando conference, and her inappropriate behavior towards the sister company's employees as reasons for her formal warning. The PIP required Hutt to submit her expenses and out-of-territory time on a set schedule. Sales representatives on formal or final written warning are ineligible for bonus compensation, according to Solvay's incentive compensation general handbook.

Hutt took a medical leave one week after being placed on formal warning; she was on leave for seven weeks, through

July 28. In response, Solvay extended the expiration date of Hutt's warning to September 18, 2008, to ensure she served the full term of her formal warning.

### C. Final Warning and Discipline of Craig King

When Hutt returned from leave, further trouble ensued: Solvay claims that Hutt cancelled numerous "field contacts," during which she was to be evaluated for her sales performance. Hutt claims that her cancellations were for medical reasons, and that Lozen also cancelled on her. Ultimately, Hutt was placed on Final Warning Status in October, scheduled to last until December 19, 2008, for failing to comply with the requirements of the April PIP. The Final Warning required Hutt to complete a series of field contacts with Lozen, Westfall, and another district manager.

Craig King, a fifty-eight year old Solvay employee, was also placed on formal warning in June, about a month after Hutt had been placed on formal warning. He was the only other representative, out of the ten representatives in Indianapolis, to be placed on warning status. On the day Hutt was placed on final warning, King was also placed on final warning. The written final warnings were substantially similar, with portions of King's warning cut and pasted into Hutt's final warning. And both King and Hutt received overall ratings of "Does Not Meet Expectations" in every category for their 2008 performance evaluations.

In February 2009, Hutt filed a complaint with the EEOC alleging age discrimination and retaliation. In March, both King's and Hutt's ratings were revised to "Partially Meets Expectations" as the result of an instruction from HR to correct an administrative error in the ratings calculation. At a

May 2009 sales meeting, Westfall angrily confronted Hutt about her February EEOC charges and demanded that she and her attorney fly to Atlanta to discuss the charges with him. In June 2009, King was terminated from Solvay, but Hutt's employment continued.

In April 2010, Hutt was informed that she was retroactively being removed from final warning, effective as of December 11, 2009. By that time, she had been under a warning status for seven consecutive quarters, and had thus been ineligible for incentive pay and bonuses for those months.

## D. Alleged Favoritism towards Mike Netterville

Hutt also alleges that beginning in 2010, Lozen began to show favoritism towards Mike Netterville, another sales representative in Hutt's sales territory. He was provided with an email list of new physician prospects that was not provided to Hutt; he ended 2010 with a lower sales rank in the region than Hutt, but received public recognition and a bonus that Hutt did not, in part because Hutt's performance evaluation by Westfall stated that her performance was unacceptable. In 2011, the company began ranking Hutt and Netterville as if they were one sales unit, even though other sales representatives were ranked individually. The duo ended the year 2011 ranked third in the region for sales, and Netterville again earned recognition and compensation as a top sales representative, but Hutt did not. Again, the reason she did not earn the recognition is linked to her poor performance review: Lozen claims he was unable to rate Hutt's overall performance because she cancelled on numerous field contacts with management during 2011. Hutt states that she participated in one field contact with Doug Zoeller, and that she was forced to cancel other field contacts for health

reasons, the death of her mother, and because Lozen refused to provide her with samples.

### E. District Court Litigation

The district court granted Solvay's motion for summary judgment on the grounds that Hutt failed to identify a similarly-situated comparator for the purposes of establishing a prima facie case of discrimination and retaliation, and because she was ineligible for bonus payments while on warning status, leaving her with no cause of action under the Indiana Wage Payment Statute, which provides a cause of action to employees who earned wages that were subsequently withheld by the employer. Hutt timely appealed.

## II

We review the district court's grant of summary judgment *de novo*, construing all facts and reasonable inferences in the light most favorable to Hutt. *See Wilson v. Cook Cnty.*, 742 F.3d 775, 779 (7th Cir. 2014). We first turn to Hutt's allegation that the district court erred in granting summary judgment on Hutt's age discrimination claim. "A plaintiff may prove employment discrimination under the ADEA, Title VII, and § 1981[ ] using either the direct method or indirect method." *Andrews*, 743 F.3d at 234 (modification in original). While it is debatable whether the two methods are sharply distinguishable, *see Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014), under the direct method, "the plaintiff must present either direct or circumstantial evidence of discrimination in her opposition to summary judgment." *Id.* at 841. Whether direct or circumstantial, the "evidence [must] permit the trier of fact to find that unlawful discrimination caused the adverse job action." *Id*. "Direct

evidence requires an admission of discriminatory intent, i.e. 'smoking gun' evidence." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014) (internal quotation marks and citations omitted). "Circumstantial evidence," by contrast, "typically includes (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Id.* "A party may combine these various types of evidence to present a convincing mosaic of circumstantial evidence from which a factfinder can make a reasonable inference of discriminatory intent." *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013) (internal quotation marks omitted).

The district court correctly concluded that Hutt's ADEA discrimination claim fails under the direct method, as she lacks both direct and circumstantial evidence. She does not provide any "smoking gun" evidence wherein Westfall or Lozen, or any other Solvay employee, admits to discrimination against Hutt on the basis of her age. Nor does she point to circumstantial evidence from which a rational juror could infer that Solvay was discriminating against Hutt based on her age. "To be convincing, [Plaintiff's] evidence must point directly to a discriminatory reason for the employer's action … and be directly related to the employment decision." *Id.* (citation and internal quotation marks omitted). But there is no evidence in the record that Lozen or Westfall, or any Sol-

vay employee, made any comments relating to, or even referencing, Hutt's age. The evidence she invokes for her age discrimination claim—Lozen's request that the employees submit their birth dates, the duration and frequency of the warnings against her, Lozen's and Westfall's hostile behavior towards her, and Solvay's warnings against Craig King—does not "point to discriminatory intent, either individually or collectively." *Id.* Rather, her assembled evidence amounts to "an amorphous litany of complaints about a myriad of workplace decisions," which cannot suffice for the purpose of establishing an age discrimination case under the direct method. *Id.* (citations and internal quotation marks omitted).

Hutt focuses her briefing on Solvay's treatment of Hutt and Craig, so it deserves mention why this is not circumstantial evidence that can be used to make a case for age discrimination under the direct method. Simply, there are no facts about Solvay's treatment of Hutt or Craig to suggest that the company's employment actions had anything to do with their ages. Hutt wants us to extrapolate that, because Hutt and Craig were respectively 54 and 59 at the time of the employment actions—the two oldest sales representatives to be placed on warning status, and also the two sales representatives to be placed on the longest terms of warning status—Solvay must have acted with age-based discriminatory intent. But the circumstantial evidence in this case does not point directly to a discriminatory reason for the employer's actions. No evidence is presented in support of the contention that the younger employees on warning status, or indeed other younger Solvay employees in general, are similarly-situated comparators, "directly comparable" to Hutt "in all material respects," and with "other possible explanatory variables" eliminated, whose differential treatment

from Hutt would allow an inference of age-based discrimination. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012); *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) ("[T]he proposed comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision."). Instead, the theory that Hutt and Craig were singled out for worse treatment based on their age is only asserted with "reliance on speculation." *Good*, 673 F.3d at 676. "[O]ne might guess or speculate that perhaps [Hutt's age] might have made a difference in the decision, but guesswork and speculation are not enough to avoid summary judgment." *Id.* at 675. For this reason, her claim fails under the direct method.

We need not analyze the record under the indirect method, because Hutt's briefs do not raise the indirect method, and so this argument has been waived. *See Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1113 (7th Cir. 2013). Nonetheless, we note that she could not succeed under the indirect method, either. Under the indirect method of proof, which uses the test first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must establish a *prima facie* case of discrimination, showing that (1) she was a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside of the protected class (in this case, younger employees) more favorably. *Bass*, 746 F.3d at 841. Here, prongs 1 and 3 are not contested: it is clear that Hutt, aged 54 at the time of the summary judgment, was part of the protected age class, and that she suffered adverse employment actions in being placed on formal and final warnings, and denied recognition

and compensation for her sales performance. But as we stated in our analysis of the direct method, Hutt has not shown that similarly-situated younger employees were treated more favorably, and her failure to prove this prong is sufficient for our affirmance of the district court's grant of summary judgment. *See Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014) ("[W]ithout similarly situated comparators, no inference of discrimination arises and [Plaintiff's] disparate treatment claims fail under the indirect method.").

### III

Hutt's retaliation claim does not fare any better. A retaliation claim under the ADEA may be established by either the direct or indirect method. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). "Under the direct method of proof, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Id.* Hutt claims that her protected activity was the filing of the EEOC charge in February 2009, and she is correct that the filing of an EEOC complaint is a protected activity. *See id.* at 658. (The district court is correct that this is the only protected activity in the record; John Hutt's phone call in March 2008 never mentioned Hutt's age, or any other attribute that would give the Plaintiff-Appellant membership in a protected class.)

However, the main defect in Hutt's retaliation claim is that she can assert no causal connection between the filing of the EEOC charge and Solvay's adverse employment actions. *See Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 481 (7th Cir. 2010) ("To survive summary judgment on her retaliation claim, [plaintiff] must present sufficient direct or circumstan-

tial evidence for the trier of fact to infer there was a causal link between the protected activity and [the adverse job action]."). Hutt had already been on formal warning for approximately ten months by the time her EEOC charge was filed on February 9, 2009. While Hutt claims that the duration of her warning status was extended as the result of her EEOC complaint, this claim relies on conjecture and temporal proximity rather than evidence. "[S]uspicious timing alone is rarely sufficient to create a triable issue … . [I]t is clear that mere temporal proximity is not enough to establish a genuine issue of material fact." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (citation and internal quotation marks omitted). *See also Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (noting that while there may be an exception to the general rule that "[e]vidence of temporal proximity … is insufficient to establish a causal connection for a claim of retaliation," such an exception "would be limited to matters occurring within days, or at most, weeks of each other"). Hutt's allegation that she was angrily confronted by Westfall three months after filing her EEOC charge is more troubling, but again, she gives no evidence, direct or circumstantial, that links Westfall's confrontation to any adverse employment action taken by Solvay. For this reason, accounts of Lozen grabbing her without her consent also fail to suffice for the purpose of a retaliation claim. Her chosen legal theory—retaliation—calls for evidence of adverse employment actions linked to a protected activity, not just evidence of problematic hostility.

Hutt could also have proceeded under the indirect method of proof for her retaliation claim. If proceeding under the indirect method, the plaintiff must show "(1) she engaged in statutorily protected activity; (2) she met the employer's le-

gitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Smith*, 674 F.3d at 657–58. However, because Hutt chose to proceed exclusively under the direct method framework for the retaliation claim in her appellate briefs, any argument under the indirect method is waived. Even if the indirect method were considered, her argument would likely fail as the result of her failure to introduce into the record a similarly-situated comparator who had not filed an EEOC charge and who was treated more favorably than Hutt. *See Tomanovich*, 457 F.3d at 667 (requiring a comparator who "is similarly situated [to the plaintiff] with respect to performance, qualifications and conduct, … and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").

For these reasons, the district court correctly granted summary judgment on Hutt's retaliation claim.

## IV

Lastly, we turn to the Indiana Wage Payment Act claim. The statute provides:

> (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semi-monthly or biweekly, if requested, the amount due the employee.

(b) Payment shall be made for all wages earned
to a date not more than ten (10) business
days prior to the date of the payment.

Ind. Code. § 22-2-5-1.

Hutt asserts that incentive pay and bonuses constitute "wages" under the statute, and argues that she was deprived of earned wages in violation of the statute when Solvay placed her on formal and final warning status in bad faith—bad faith that may be established even if her retaliation and discrimination claims fail. She contends that summary judgment was not proper on this question because there exists a genuine question of material fact as to whether Solvay acted in bad faith in placing Hutt on warning status. Solvay contends that it is beyond dispute that Hutt was ineligible for bonuses while on formal and final warning status, and that her placement on warning status did not involve any bad faith conduct on the part of Solvay or its employees.

A preliminary question is whether Hutt's bad faith conduct argument was waived below. It appears Hutt at least briefly mentioned this concept before the district court: her brief in response to Solvay's summary judgment motion stated that "[a] genuine issue of material fact also exists as to whether Solvay's imposition of a Formal Warning was imposed on Mrs. Hutt in bad faith to coerce her resignation or in retaliation for protected activities. Mrs. Hutt's claim under the Wage Payment Statute for earned compensation is valid under the law, independent of her age discrimination and retaliation claims." Pl.'s Resp. Defs.' Joint Mot. Summ. J. at 32 (N.D. Ind. Jul. 23, 2012), ECF No. 78. However, Solvay argues that because Hutt did not elaborate on her allegations of miscellaneous "bad faith" conduct by Solvay before the

district court—that is, bad faith conduct separate from Solvay's alleged acts of retaliation and age discrimination—we should consider this argument waived. *See Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 509 (7th Cir. 2013) ("A party waive[s] the ability to make a specific argument for the first time on appeal when the party fail[s] to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.") (modifications in original) (citations and internal quotation marks omitted).

Solvay's point on waiver is compelling. Having scoured Hutt's opposition brief before the district court, we cannot discern a substantive allegation of bad faith that is independent of her age discrimination and retaliation claims. In supporting her contention that Solvay acted in bad faith, Hutt argued that "Defendants' actions outlined above were taken due to her age and in retaliation for complaints to Solvay made" by John and Julia Hutt. In closing the section, she again asserted that Solvay's actions in placing Hutt on warning status "was a mere pretext for its intent to separate Mrs. Hutt from her job based on her age or in retaliation for her participation in protected activities." She did not specify or develop another theory of how Solvay acted in bad faith.

Because the Plaintiff-Appellant failed to develop her bad faith argument below, she cannot now raise this argument for the first time on appeal. As we have found that the district court's summary judgment on the retaliation and discrimination claims were proper, Plaintiff-Appellant's Indiana Wage Payment Act claim also fails, because she is able to present no other theory of how Solvay's disciplinary actions against her constituted a "bad faith" withholding of her

wages. Accordingly, we affirm the district court's grant of summary judgment.

## V

For the foregoing reasons, we AFFIRM the district court's judgment.