In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1384

CARRIE L. ZEPPERI-LOMANTO,

*Plaintiff-Appellant*,

*v.*

AMERICAN POSTAL WORKERS UNION,
AFL-CIO and NORTHWEST ILLINOIS
AREA LOCAL 7140, AMERICAN POSTAL
WORKERS UNION, AFL-CIO,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 3847 — **Elaine E. Bucklo**, *Judge.*

ARGUED SEPTEMBER 7, 2012 — DECIDED MAY 2, 2014

Before CUDAHY, ROVNER, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Carrie Zepperi-Lomanto, an employee of the United States Postal Service, sued the union that represented her, the Northwest Illinois Area Local of the American Postal Workers Union, for breaching its duty of fair

representation under the Labor Management Relations Act, 29
U.S.C. § 185, by filing retaliatory grievances against her. The
district court granted summary judgment for the union, and
she appeals. Because none of the relief Lomanto seeks is
available to her, we affirm.

## I.

Reviewing a grant of summary judgment, we recount the
facts in the light most favorable to the non-movant, Lomanto.
*Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 584 (7th Cir. 2011).
Since 2000, Lomanto worked as a custodian for the United
States Postal Service, cleaning the processing and distribution
center in Palatine, Illinois. Her custodian position was a "bid
job," with a fixed schedule, awarded on a seniority basis under
rules set out in the collective bargaining agreement between
the union and the Postal Service.

In 2005, Lomanto started working for higher pay as a
"temporary maintenance supervisor," supervising other
custodians on an "as-needed basis" several times a year.
Because such positions are not meant to be permanent, the
CBA limits their term to four months, but Postal Service
managers may reassign employees as temporary supervisors
after they return to their regular jobs for a complete two-week
pay period. Accordingly, bid jobs are reserved, or "encum-
bered," during a temporary assignment for four months only
and then declared vacant, so that another union member can
enjoy the steady schedule.

In December 2008, union steward Robert LaFoe warned
Lomanto that she had violated the four-month rule when she
did not return to her custodian position for a full pay period

between supervisory assignments. LaFoe told her that although she had worked as a custodian for two consecutive weeks, those weeks did not align with a pay period. LaFoe, however, decided not to file a grievance against her with Postal Service management, and a few weeks later she was again assigned to be a temporary supervisor.

During that assignment, Lomanto told a supervisor that Rick Szczesny, another Postal Service employee and union steward, had entered false information on his timesheet, and as a result Szczesny received a written warning. Soon after, in April 2009, LaFoe did file a grievance against Lomanto, alleging that she submitted false information about sick leave. Postal Service management denied the grievance for lack of evidence, and in so doing cast doubt on LaFoe's motives. According to management's grievance summary, LaFoe told Lomanto, apparently in regard to Lomanto's reporting of Szczesny, "this is what happens when you issue action on a fellow steward."

Events at the end of Lomanto's supervisory assignment led to LaFoe filing another grievance against her for working as a supervisor without having first completed a two-week pay period as a custodian between supervisory assignments. Shortly before the end of her four-month assignment, Lomanto received travel time at the supervisory pay rate for attending a training in Oklahoma for Postal Service supervisors, even though her return fell on the first day of a new pay period. For the rest of that new pay period, she returned to her custodial work, and then the next day, she was again assigned to be a temporary supervisor. Szczesny and Patricia Scott, who later received Lomanto's bid job and schedule, submitted statements

that they saw Lomanto working in the supervisors' office during the intermediate pay period.

Postal Service management concluded that Lomanto had indeed violated the CBA's four-month rule: she did not complete a two-week pay period as a custodian because she did not start her custodial stint until the contested pay period already had begun. According to management, she still was in her supervisory position on the day she traveled home from the conference, the first day of the new pay period. Management stripped Lomanto of her bid job, which was ultimately given to Scott. Lomanto continued working at the Postal Service as a temporary supervisor.

Lomanto sued the union for breaching its duty of fair representation under section 301 of the LMRA, 29 U.S.C. § 185. She alleged that, instead of fairly representing her in the dispute about the CBA's four-month rule, the union acted in bad faith by filing retaliatory grievances against her. She sought (1) reinstatement to her bid job, (2) punitive damages, (3) compensatory damages, including for emotional pain and suffering, and (4) attorneys' fees.

The union moved for summary judgment contending that it did not breach its duty of fair representation because the second grievance was successful and, further, Lomanto could not obtain any of the relief she sought. The district court granted the motion. The court acknowledged that there was a fact question about the union's motive in filing the grievances, but concluded that Lomanto could not obtain her requested relief because only the Postal Service could reinstate her, but it was not party to the suit; neither punitive damages nor

emotional-distress damages are available in fair-representation suits; and the "American rule" would prohibit her from recovering attorneys' fees if she were to prevail.

## II.

On appeal Lomanto challenges the district court's conclusion that none of her requested relief is available to her. First, Lomanto argues that the union could convince the Postal Service to reinstate her. But, as the district court noted, the union itself cannot reinstate Lomanto and the court could not order the Postal Service to give her back her bid job because the Postal Service is not a party to the suit. Indeed, "relief against the Union in a civil action could never produce reinstatement." *Baldini v. Local Union No. 1095*, 581 F.2d 145, 149 (7th Cir. 1978).

Second, Lomanto challenges the ruling that she would not be entitled to punitive damages. She acknowledges that the Supreme Court in *International Brotherhood of Electric Workers v. Foust*, 442 U.S. 42, 52 (1979), held that punitive damages are not available in suits by union members against the union for failing to properly pursue a grievance, but distinguishes her case on grounds that the union here filed a retaliatory grievance. Contrary to Lomanto's position, we have interpreted *Foust* to establish "a blanket prohibition against the recovery of punitive damages in all fair representation suits." *Lewis v. Local Union No. 100 of Laborers' Int'l Union of N. Am.*, 750 F.2d 1368, 1382 (7th Cir. 1984) (collecting cases from other circuits).

Third, Lomanto contests the conclusion that emotional-distress damages are not available in fair-representation cases. She cites contrary authority, *see, e.g.*, *Baskin v. Hawley*, 807 F.2d

1120, 1133 (2d Cir. 1986); *Richardson v. Comm. Workers of Am.*, 443 F.2d 974, 983 n.12 (8th Cir. 1971), but we have ruled that state-law claims for emotional distress are preempted by the LMRA in disputes involving the CBA, *Chapple v. Nat'l Starch & Chem. Co.*, 178 F.3d 501, 508 (7th Cir. 1999); *In re Amoco Petrol. Additives Co.*, 964 F.2d 706, 709–10 (7th Cir. 1992), and Lomanto's allegations give us no reason to allow emotional-distress damages in her case. Other circuit courts have allowed emotional-distress damages in exceptional cases when the union's conduct was "truly outrageous," *Baskin*, 807 F.2d at 1133; *see also, e.g.*, *Richardson*, 443 F.2d at 983 n.12 (plaintiff's car tires deflated, wife insulted, and plaintiff burned with cigarette and pelted with nuts, bolts, and screws, among other harassments), but Lomanto's allegations that the union filed a retaliatory grievance about sick leave and submitted false statements from Szczesny and Scott (neither action affected the ultimate decision to take away her bid job) suggest that the union may have cut corners, but not that its behavior was "truly outrageous."

Finally, Lomanto insists that attorneys' fees are recoverable when a union breaches its duty of fair representation, and in support cites *Bennett v. Local Union No. 66*, 958 F.2d 1429 (7th Cir. 1992). But *Bennett* authorized recovery only of legal "expenses incurred in pursuing the claim against the employer," not attorneys' fees in a suit against the union. *Id.* at 1440. Requiring the union to pay for Lomanto's attorneys' fees would not only fly in the face of the "American rule"—that litigants pay their own attorneys' fees, win or lose, *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)—it would make no sense: the union has no duty to represent Lomanto

and prosecute the case against itself. Because Lomanto cannot obtain the relief that she seeks, the judgment is

AFFIRMED.