In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2070

DIANE M. RIPBERGER,

*Plaintiff-Appellant*,

*v.*

CORIZON, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana.
No. 1:11 CV 01394— **Tanya Walton Pratt**, *Judge.*

ARGUED FEBRUARY 24, 2014 — DECIDED DECEMBER 10, 2014

Before FLAUM and ROVNER, *Circuit Judges* and KENDALL, *District Judge.*[*]

ROVNER, *Circuit Judge.*   Diane Ripberger lost her job as a substance abuse counselor for the Indiana Department of Corrections ("IDOC") when Corizon, Incorporated ("Corizon")

---

[*] The Honorable Virginia M. Kendall of the Northern District of Illinois, sitting by designation.

contracted with IDOC to provide counseling for Indiana prisoners. Ripberger sued Corizon, claiming sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and age discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted Corizon's motion for summary judgment, and Ripberger appeals. For the reasons stated below, we affirm.

**I**.

Because we are reviewing the district court's grant of summary judgment against Ripberger, we recount the facts in the light most favorable to her, noting any discrepancies in the parties' evidence where relevant. *See Zepperi-Lomanto v. Am. Postal Workers Union,* 751 F.3d 482, 483 (7th Cir. 2014). Ripberger, who was born in 1951, began working for IDOC as a substance abuse counselor in 1991. As relevant here, she returned to work as a counselor in March 2008 (after having retired in 2007) at IDOC's Pendleton Correctional Facility near her home in Anderson, Indiana. In addition to being a licensed social worker for the State of Indiana, Ripberger has a bachelor's degree in sociology and over 60 hours towards a master's degree in pastoral counseling. During the relevant time period, Ripberger worked as a Substance Abuse Counselor IV, counseling primarily Level 4 offenders in the Indiana Reformatory at Pendleton.  Level 4 offenders are those who are serving very lengthy sentences and have committed serious or violent crimes.

## A. Ripberger's Support of Connie Orton-Bell

Ripberger lost her job in 2010, when IDOC contracted out its substance abuse counseling program to Corizon. Ripberger alleges that Corizon's decision not to hire her stemmed in part from previous events involving her supervisor in 2009, Connie Orton-Bell. Mick Schoenradt, who was the Acting Substance Abuse Director for IDOC, supervised Orton-Bell. Sometime in 2009 and early 2010 both Orton-Bell and Ripberger complained that their desks were being used after hours. According to Ripberger, they were told it was "just" staff members, not inmates, using their desks for sex, and that if they found that troubling they could simply wash down their desks daily. Shortly thereafter, however, it came to light that Orton-Bell herself was having an affair with the Major in charge of custody, a sexual liaison that was apparently deemed unacceptable, despite IDOC's tolerance of the aforementioned sexual after-hours conduct. Ultimately, both Orton-Bell and the Major were terminated because of the affair, but unlike Orton-Bell, the Major was able to quickly receive unemployment benefits, keep all of his benefits (including his pension), and begin working again at the prison on a contract basis shortly thereafter. Orton-Bell filed a suit under Title VII alleging claims of sex discrimination, retaliation, and hostile work environment. The full details of Orton-Bell's complaints and her charge of discrimination can be found in *Orton-Bell v. Ind.*, 759 F.3d 768 (7th Cir. 2014). Ripberger supported Orton-Bell's sex discrimination complaint by explaining to Orton-Bell how to file a grievance and sitting in on her hearings as a silent employee witness.

**B.  IDOC's Substance Abuse Recovery Program at Pendleton**

IDOC organized its substance abuse counseling services around offenders categorized from Level 1 through 4. As stated above, Ripberger worked during the relevant time period with Level 4 inmates in an area of the Pendleton complex known as the Reformatory. There was also a "therapeutic community" for Level 2 and 3 inmates in a separate facility called the Community Industrial Facility. Level 1 inmates received therapy at still another location known as the Outside Dorm. Unlike the Reformatory, the Community Facility and the Outside Dorm were located outside of the fenced area on the Pendleton complex. At the time of the privatization, seven IDOC employees worked as substance abuse counselors in the three counseling areas at Pendleton. Three counselors, Diane Diggins, Kathryn Choate, and Randy Smith, worked with the Level 1 offenders in the Outside Dorm. Three other counselors, Avery Thomas, Joanne Massey-Neskov, and Anna Sasin, worked in the Community Industrial Facility with the Level 2 and 3 inmates. Ripberger was the only counselor working with Level 4 offenders in the Reformatory. She maintains that her primary caseload was not the Reformatory and that she provided therapy to all levels of offenders. Indeed, before 2010, Ripberger had worked several hours a day in the Outside Dorm, but in early 2010 when it became a therapeutic community providing continuous treatment in an inpatient setting, she no longer had a caseload there. It thus is undisputed that between March and August 2010 she did not counsel any inmates outside of the Reformatory and that she was also the only counselor assigned to the Reformatory. The

Reformatory position was eliminated when IDOC outsourced the provision of counseling to Corizon.

## C. IDOC's Decision to Privatize Counseling Services

In the summer of 2010, IDOC employed 93 substance abuse counselors at prisons throughout Indiana. At that time, IDOC determined it would outsource its substance abuse counseling positions to Corizon. Although Corizon planned to retain as many IDOC substance abuse counselors as possible, the contract between IDOC and Corizon provided that Corizon would hire only 88 substance abuse counselors. As Acting Substance Abuse Director for IDOC, Schoenradt was slated to continue supervising the substance abuse program for Corizon when the transition was completed in September 2010. To that end, Corizon delegated the hiring and placement decisions to Schoenradt.

Schoenradt created a staffing plan and a do-not-hire list based on the need to reduce employees and the needs at the various prisons. Ripberger did not appear on the do-not-hire list, which named a very few employees whose performance did not warrant continued employment. Schoenradt instead placed Ripberger's name next to Randy Smith on his staffing plan to indicate that one of the two of them would be hired for an open position at Pendleton. On a color-coded spreadsheet classifying IDOC employees based on their experience, Ripberger's name appeared in gray, which meant she was "good to go" for continued employment.

Ripberger and other IDOC employees learned about the decision to privatize substance abuse counseling services at a meeting on August 13, 2010. Employees were told that they

would no longer be employed by IDOC but that they could apply for positions with Corizon. The hiring process was expected to be quickly completed over the next week so that Corizon could completely take over the substance abuse counseling services effective September 1, 2010.

Schoenradt was present at the meeting along with Alan Finnan, the Superintendent of Pendleton. At that meeting, Ripberger was standing by Superintendent Finnan and Schoenradt when she said to Finnan, "I'm kind of feeling on the short end of the stick here." Ripberger says she was referring to her support of Orton-Bell and her discrimination claim. She testified that Finnan replied, "There might be a reason for that." In her deposition, Ripberger acknowledged that she knew at the time that there would no longer be a substance abuse counselor inside the Reformatory, and so she asked Schoenradt where he was planning to send her. She remembers Schoenradt telling her that he thought he had "something else" in mind for her. Ripberger recalls that after this exchange, Finnan asked to speak with Schoenradt privately and they left together. Schoenradt, for his part, recalls speaking with many Pendleton employees that day but does not recall talking to Ripberger specifically.

## D. Corizon's Hiring Process

After the privatization announcement, interested IDOC employees were instructed to apply and interview for a position with Corizon. All seven substance abuse counselors working at Pendleton applied for the six positions then available in light of the decision to eliminate counseling services in the Reformatory. Because Corizon wanted to retain

IDOC employees whenever possible, it conducted cursory interviews to determine which IDOC employees wanted to begin working for Corizon. Representatives from Corizon visited IDOC facilities to conduct interviews between August 16 and 18. Corizon employees Royace Gibson and Mary Mansfield[1] interviewed Ripberger and asked only why she wanted to be a substance abuse counselor. Ripberger believes that other applicants received more thorough interviews and that her interview was a pretense.

Schoenradt explained that to maintain continuity of care, Corizon hired the six substance abuse counselors who had been working in the Outside Dorm and the Community Facility for the six positions it needed to fill in those areas. Because the position in the Reformatory was eliminated, Ripberger was not offered a position at Pendleton. A Corizon recruiter called her on August 19, 2010, and informed her that although the counseling position in the Reformatory at Pendleton was being eliminated, there were positions available at the Miami or Putnamville Correctional Facilities. Although Ripberger denies "slamming" down the phone, she acknowledges that she informed the recruiter that she had no interest in traveling, warned her never to call again, and hung up the phone. Earlier that same day, Ripberger had appeared with Orton-Bell at the final hearing on her discrimination complaint. Finnan was present and testified at the hearing, and although Ripberger did not interact with him, she maintains that he seemed "surprised" and "irritated" to see her there. Shortly

---

[1] The district court erroneously identified Mansfield as an IDOC employee.

thereafter, Ripberger received the call from Corizon informing her that she would not be hired at Pendleton.

Ripberger instituted this suit alleging sex discrimination, retaliation, and age discrimination claims under Title VII and the ADEA. The district court granted Corizon's motion for summary judgment. The court acknowledged that Ripberger was a "qualified and capable" substance abuse counselor but concluded that the evidence showed only that she lost her job because she was the "unfortunate victim" of a reduced work force in the wake of IDOC's privatization of its substance abuse counseling program. Ripberger appeals.

## II.

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in the light most favorable to Ripberger. *See, e.g., Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 691 (7th Cir. 2014). We first consider Ripberger's argument that the district court erred in granting summary judgment on her claims of sex and age discrimination. Employment discrimination under Title VII or the ADEA may be proven using either the so-called "direct" or "indirect method." *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). Ripberger takes issue with the district court's decision to analyze her evidence separately under both the direct method and the indirect *McDonnell Douglas* burden-shifting approach, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and claims that the court should have instead considered what she characterizes as the "totality" of the evidence. It is true that we have noted that "it is debatable whether the two methods are sharply distinguishable," *Hutt*, 757 F.3d at 691 because "when

all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014); *see also Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("By now … the various tests that we insist lawyers use have lost their utility… . In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason."). But contrary to Ripberger's assertion, none of the cases she cites explicitly disavows the use of the direct and indirect *McDonnell-Douglas* burden-shifting method as an appropriate framework for answering the ultimate question of whether a plaintiff has marshaled sufficient evidence to create a triable issue of fact. Moreover, as will be discussed in detail, there is no reason to believe that Ripberger's claims would succeed regardless of how the evidence is viewed. So it ultimately makes no difference whether or not the district court collapsed the direct and indirect methods for proving discrimination.

## A. Sex Discrimination

We begin with her sex discrimination claim. Title VII forbids an employer from refusing to hire or otherwise discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment" on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Without specifically referencing the direct or indirect method, Ripberger

simply argues that she presented evidence of sex discrimination. Under the direct method, Ripberger may rely on direct or circumstantial evidence of discrimination sufficient to permit a trier of fact to conclude that unlawful discrimination motivated Corizon not to hire her. *See Bass*, 746 F.3d at 841. Ripberger may create an inference of discriminatory intent using direct evidence (that is, evidence of discriminatory intent without resort to inference) or circumstantial evidence such as suspicious timing or ambiguous statements, evidence that others outside the protected class were systematically treated better, or evidence that the employer gave a pretextual reason for the adverse employment action. *Hutt*, 757 F.3d at 691; *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (listing circumstantial evidence that may create an inference of discrimination); *Naficy v. Ill. Dep't of Human Serv.*, 697 F.3d 504, 513 (7th Cir. 2012). Whether explicitly considered under the "direct method" or not, Ripberger's evidence of sex discrimination is too thin to permit a reasonable factfinder to conclude she was not offered a position by Corizon because of her sex.

At the outset, we note that there is nothing in Corizon's hiring process on its face that suggests it is guilty of sex discrimination. By the beginning of September 2010, Corizon had hired 59 former IDOC substance abuse counselors at facilities throughout Indiana. Thirty-five of those counselors, or 59%, were female. At Pendleton itself four of the six counselors hired were female—67%. There is thus no evidence that Corizon gave males preferential treatment in its hiring decisions. *See Good*, 673 F.3d at 675. (evidence that employees outside the protected class received systematically better treatment may create an inference of discrimination).

Her primary evidence of sex discrimination is the fact that Randy Smith was hired by Corizon despite the fact that he was less qualified than Ripberger. Because it is undisputed that Ripberger was qualified for a substance abuse position, the question under either the direct or indirect method is whether Corizon has advanced a legitimate reason for hiring Smith instead of Ripberger. *See Hitchcock v. Angel Corps., Inc.*, 718 F.3d 733, 737-38 (7th Cir. 2013) (when prima facie case and pretext analysis overlap it makes sense to inquire directly into legitimacy of employer's stated nondiscriminatory reason for its action). Corizon presented evidence that when it took over counseling services for IDOC, its primary goal was to hire as many existing IDOC substance abuse counselors as possible (with the exception of those appearing on the no-hire list) and maintain continuity of care. Unfortunately, the Reformatory position where Ripberger had most recently been working was eliminated. Thus, Corizon staffed the six remaining available positions with those substance abuse counselors who were at that time working in the Outside Dorm or the Community Industrial Facility. At the time of the transition, Randy Smith had a caseload in the Outside Dorm. Schoenradt testified that when he made his staffing plan he did not know whether Smith would seek employment with Corizon because of his military duties. He thus placed Ripberger's name and Smith's name on the same line for the position Smith had held in the Outside Dorm to indicate that if Smith did not apply the slot would be given to Ripberger. Because it was Smith's caseload, when he did apply for the position, it was given to him.

Seen in this light, the undisputed fact that Ripberger was more qualified than Smith does not raise an inference of sex

discrimination. Instead, it shows that Corizon valued continuity of care over experience. Ripberger lists many reasons why she believes this is a poor approach to substance abuse counseling and why she would have been a superior choice for the position. But none of her reasons cast doubt on the legitimacy of Corizon's assertion that it hired Smith to fill the open position in the Outside Dorm because he had previously been working for IDOC in that position. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014) (plaintiff may establish pretext with evidence that employer's proffered reason is phony or a lie for the real reason). As we have stated repeatedly, it is not our province to sit as a super-personnel department evaluating the wisdom of an employer's staffing decisions. *E.g.*, *Widmar v. Sun Chem. Corp.*, — F.3d. — 2014 WL 6467287 at *6 (7th Cir. Nov. 19, 2014); *Silverman v. Bd. of Educ.*, 637 F.3d 729, 738 (7th Cir. 2011) (ultimately irrelevant whether employer's reason was "wise, fair, or even correct" so long as it was real reason for adverse employment action) (citation and internal quotations omitted).

Ripberger repeatedly emphasizes that at the time Smith was hired he had less experience and also did not possess the requisite certification for the position. Moreover, he never did become certified. Corizon gave the substance abuse counselors thirty days to pass the test for certification and licensing, but Smith never met his obligation to do so.[2] After several warn

---

[2]  The parties briefs do not illuminate the precise nature of the required certification, but a memo in the record discusses Smith's failure to "become certified through CADAC." Presumably this refers to the licensing and

(continued...)

ings, Smith was ultimately terminated the following year (August 2011) on account of his failure to ever obtain the required certification. Ripberger points to Smith's later termination as evidence of sex discrimination. But the fact that in hindsight Ripberger may have been a better choice than Smith does nothing to establish that he was hired over Ripberger because she is a female. If anything, it may demonstrate Corizon's short-sightedness in prioritizing continuity of care over experience and certification, but as discussed above, it is not our province to assess the wisdom of Corizon's personnel decisions.

Ripberger also claims in a single sentence that there was a pattern of sex discrimination, as evidenced by Orton-Bell's termination when she complained about sex discrimination and the fact that Ripberger was not hired by Corizon after supporting Orton-Bell. Not only is this argument waived because it is perfunctory and undeveloped, *Bass*, 746 F.3d at 841 n.1 (7th Cir. 2014), there is no evidence in the record of a "pattern" of sex discrimination, especially by Corizon. Corizon had nothing to do with Orton-Bell's termination by IDOC based on the alleged affair with her male coworker. Although the circumstances surrounding Orton-Bell's termination may be troubling, *see Orton-Bell*, 759 F.3d at 778 (remanding Orton-Bell's sex discrimination claim for further discovery into IDOC's more favorable treatment of her male coworker),

---

[2] (...continued)
certification requirements for "certified alcohol and drug counselors (CADCs)." http://education-portal.com/cadc_degree.html.

Ripberger provides no information to support her conclusion that there was a "pattern" of sex discrimination or that anyone discriminated against her on the basis of sex.

And although Ripberger fails to explicitly argue her case using the indirect *McDonnell-Douglas* framework, we note that her sex discrimination claim fails under this approach as well. A plaintiff establishes a prima facie case of discrimination under the indirect method with evidence that (1) she is a member of the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly-situated employees outside of the protected class received more favorable treatment. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 202 (7th Cir. 2013). The only disputed element here is whether Ripberger suffered an adverse employment action. Corizon argues that there was no adverse employment action given that it offered her a potential position at either the Miami or Putnamville institutions. Construing the facts in the light most favorable to Ripberger, a jury could conclude that she reasonably believed she was applying for a position at Pendleton. In addition to being the location of her current job, Pendleton was much closer to Ripberger's home than either Miami or Putnamville; thus, positions at either of those facilities could reasonably be viewed as a material change in the terms, conditions, or privileges of her employment. *See Brewer v. Bd. of Tr. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007) (reciting standard for adverse employment action).

Once Ripberger establishes a prima facie case, the burden shifts to Corizon to articulate a legitimate, nondiscriminatory reason for its decision. As discussed above, Schoenradt explained that after the Reformatory position was eliminated,

he decided to fill the six remaining positions with those counselors already holding a caseload in the therapeutic communities in which Corizon was hiring. Schoenradt stated that although he believed Ripberger was a good employee, he thought that continuity of care for both clients and counselors tipped the scales in favor of hiring Smith. As the discussion above makes clear, Ripberger has failed to cast suspicion on this stated reason. The evidence in the record suggests that in the rapid transition from IDOC to Corizon, Corizon sought to minimize disruption wherever possible by retaining currently qualified IDOC employees in the positions they already held. Ripberger claims that staff at Pendleton were interchangeable and that she could easily have moved between the Reformatory, the Outside Dorm, and the Community Industrial Facility, something she had done in the past. Thus, the argument goes, it only makes sense that she should have been hired in lieu of Smith, who was less qualified and less experienced. But as compelling as her claim may be, it does not undercut the legitimacy of Corizon's explanation that it filled openings when possible with those employees already working in those positions.

## B.  Age Discrimination

The ADEA makes it unlawful for an employer to refuse to hire or otherwise discriminate against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Ripberger was 59 in August 2010 and thus qualifies for protection under the ADEA, which is limited to individuals forty and over. 29 U.S.C. § 631(a). As with her Title VII claims, she may avoid summary judgment by providing either direct or circumstantial evidence that would allow a reasonable juror to infer that her employer

acted for discriminatory reasons. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). In the case of the ADEA, Ripberger must produce evidence from which a jury could infer that her age "was a but-for cause of [her] termination." *Id.* at 604; *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that under ADEA's language prohibiting discrimination "because of" age plaintiff must prove at trial that age was but-for cause of adverse employment action).

We need not belabor the various avenues for proving discrimination under the direct and indirect method, because Ripberger fails to point to any evidence that Corizon failed to hire her on account of her age. She argues cursorily that the evidence supporting her sex discrimination claim also establishes that Corizon's stated reason for refusing to hire her was a pretext for age discrimination. Specifically, she points out that Corizon hired younger less-qualified employees who failed to pass the test for certification and license within the required 30-day time frame given by Corizon. But as discussed above, this evidence does not establish that Corizon sought to avoid hiring older employees or that it passed over Ripberger because of her age. Instead, it simply reaffirms that it chose employees with active caseloads in the Correctional Industrial Facility and the Outside Dorm because those were the positions it needed to fill. And although Ripberger again points out that she was more qualified than those hired and could have easily worked in either of those settings as she had done in the past, there is no evidence that her caseload at the time included inmates from either area, whereas all of the other substance abuse counselors hired did counsel inmates in the Correctional Industrial Facility and the Outside Dorm.

Ripberger points to no other evidence in the record that Schoenradt or any other decisionmaker harbored any discriminatory animus based on age. Indeed, the notion that Schoenradt desired to eliminate Ripberger because of her age is unlikely given that he had hired Ripberger to return to work at Pendleton just two years before when she was 57 years old.[3] *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) ("It seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later.") (quoting *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992)). Any inference of age discrimination is further undercut by the fact that of the six employees Corizon hired at Pendleton, three were relatively close to Ripberger's age: Anna Sasin was 51, Diane Diggins was 57, and Avery Thomas was over 60. *Cf. O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (no inference of age discrimination can be drawn from the replacement of one worker with another worker insignificantly younger). Simply put, Ripberger has presented no evidence that her age motivated Corizon's decision not to hire her.

## C. Retaliation

That leaves Ripberger's Title VII retaliation claim, which requires her to demonstrate that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013);

---

[3] When Ripberger returned to work in 2008, she was interviewed by Schoenradt and Kathy Griffin. She testified that although she was uncertain who decided to hire her, it "was probably the two of them together," with the superintendent giving the final approval.

42 U.S.C. § 2000e-3(a). She maintains that she has presented sufficient evidence of retaliation under both the direct and indirect method as well as under the totality of the evidence. Under the direct method, Ripberger must demonstrate (1) that she engaged in statutorily protected activity; (2) that her employer took an adverse employment action against her; and (3) that the protected activity and the adverse employment action are causally connected. *Moultrie v. Penn Aluminum Int'l., LLC*, 766 F.3d 747, 754 (7th Cir. 2014). As with sex and age discrimination, retaliatory motive may be established through circumstantial evidence such as suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual and "other bits and pieces from which an inference of discriminatory intent might be drawn." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012) (citation and internal quotations omitted); *see also Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014).

It is undisputed that Ripberger engaged in statutorily protected activity by assisting Orton-Bell with her discrimination complaint. *See* 42 U.S.C. § 2000e-3(a) (prohibiting employer retaliation because an employee has opposed an unlawful employment practice or has "testified, assisted, or participated in any manner" in a Title VII "investigation, proceeding, or hearing"). And as discussed above, she has also demonstrated that she suffered an adverse employment action when Corizon did not offer her a position at Pendleton. The only remaining question then is whether Ripberger has shown a causal connection between her support of Orton-Bell and Corizon's decision.

Ripberger provides a laundry list of evidence that she believes demonstrates the required causal connection. First is her exchange with Finnan where she told him she was feeling on the "short end of the stick" and he replied that there "might be a reason for that." Although she claims that she was referring to her support for Orton-Bell, there is no evidence that Finnan knew what Ripberger meant by her remark. (It is certainly possible that Finnan assumed Ripberger was referring to the fact that her position in the Reformatory was being eliminated, although that would be a question for the jury to decide.) And although Finnan's statement may be ambiguous, it does little to support an inference of retaliation. Circumstantial evidence "must point directly to a discriminatory reason for the employer's action," *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013) (citation and internal quotation marks omitted), and this unexplained conversation falls short of that standard.

More importantly, Ripberger has not established that Finnan had any say in Corizon's hiring decisions. It is clear from the evidence that Schoenradt made the hiring decisions for Corizon, and Ripberger has provided nothing beyond her own speculation that Finnan had some "say so" in the decision-making. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007) (plaintiff's evidence that allegedly biased complex manager played role in adverse decision made by regional manager was "simply too speculative" to establish involvement).

Given Ripberger's failure to prove Finnan was involved in the decision, it is irrelevant that he may have disapproved of her involvement in Orton-Bell's claim. Likewise, the fact that

Finnan spoke with Schoenradt in private on the day the privatization was announced does not create an inference that he instructed Schoenradt not to hire Ripberger or otherwise became involved in the hiring process. And the fact that he was surprised and irritated to see her at Orton-Bell's final hearing on August 19 does not support an inference of retaliation, even when taken together with the fact that she later received a call from the Corizon recruiter informing her that she would not be hired back into a position at Pendleton. Whatever probative value these facts may have as to Finnan's thoughts about Ripberger supporting Orton-Bell, they tell us nothing about whether he was a decisionmaker in Corizon's hiring process. And without that critical link, there is no inference of retaliation to be drawn from Ripberger's evidence regarding Finnan. In his affidavit, Schoenradt stated that at "no time while making the hiring and placement decisions did I consider Ripberger's participation in a grievance filed by her former IDOC supervisor, Connie Orton-Bell, against IDOC." None of Ripberger's evidence about Finnan calls Schoenradt's affirmation into question, and without evidence of Finnan's input into the decision Ripberger cannot show causation. *See Willis v. Marion Cnty. Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997) (affirming judgment as a matter of law where plaintiff presented no evidence that biased employees influenced employer's decision to discharge plaintiff)*; see also Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379-81 (7th Cir. 2011) (collecting cases and discussing what level of involvement in the decision by a biased non-decisionmaker is necessary to impute liability to employer for that employee's bias).

Ripberger also claims an inference of retaliation can be drawn from a conversation she had with Corizon employee Mary Mansfield. On Ripberger's last day (August 31, 2010), Mansfield took her to lunch. During lunch, Mansfield asked Ripberger whether she thought Corizon had not hired her because she had helped Orton-Bell with her complaint against IDOC. Ripberger said that yes, she did think that was the reason, and Ripberger testified that Mansfield replied, "I do too." Mansfield's speculation as to why Ripberger was not hired is exactly that—speculation. Not only does this fall short of creating an inference of unlawful retaliation, it too is irrelevant without evidence that Mansfield played some role in the hiring decision or had some other inside information that would lend credibility to her opinion as to why Ripberger was not hired. *Cf. Metzger v. Ill. State Police*, 519 F.3d 677, 682 (7th Cir. 2008). Ripberger has no such evidence, and Mansfield herself testified that she had no role in deciding which IDOC employees were offered employment by Corizon and did not know how that decision was made.

Ripberger has a lengthy list of other evidence that she claims shows retaliation: that she was not told where her interview with Corizon would be; that her interview was shorter than that of other IDOC employees; that her name appeared on Schoenradt's "good to go" list; that she was not listed as one of the few "do not hire" individuals; and that there existed what she alleges was a "pattern of retaliation" against herself and Orton-Bell. Whether considered together or in isolation, none of these facts establish a causal link between her support of Orton-Bell and Corizon's decision not to hire her.

First, she offers no evidence as to who should have in-
formed her about the interview, nor did she actually miss the
interview. The fact that she was unsure at some point where
the interview would be held is largely irrelevant. Similarly, the
interviews were cursory in nature because Corizon sought
simply to ascertain which IDOC employees were interested in
retaining their current positions. Ripberger offers no evidence
to undercut this claim, nor does she point to testimony from
any other employees stating that they received more thorough
or substantive interviews than she did. And the fact that she
was listed on Schoenradt's list as "good to go" does nothing to
prove Corizon retaliated against her: it simply demonstrates
that he believed she was fully qualified to remain in her
position—a position that, regrettably, was eliminated when
Corizon took over. Indeed, presumably Schoenradt continued
to believe Ripberger was a valuable employee; otherwise it
seems unlikely that Corizon would offer her one of the two
available positions at neighboring facilities. Finally, Ripberger
points to no evidence to support the alleged "pattern of
retaliation" by Corizon, a pattern that would be particularly
difficult to prove in any event given that IDOC, and not
Corizon, terminated Orton-Bell.

That leaves Ripberger's reliance on the temporal proximity
between her appearance at Orton-Bell's final hearing and the
call she received later that day from the Corizon recruiter
informing her that she would not be offered a position at
Pendleton. But she has no evidence that the call did not fit
within the general timing of Corizon's hiring process or was
otherwise suspicious. There is also no evidence that Finnan,
whom Ripberger saw at the hearing, communicated that day

with anyone involved in the hiring decision. Thus, Ripberger has nothing to establish retaliation beyond the suspicious timing itself. But it is well established that "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir.2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions."). Given the lack of evidence suggesting that the timing of the phone call was anything but coincidental, this is not the rare case where temporal proximity alone may suffice to suggest illegitimate motive.

Ripberger's claim fares no better under the indirect method. Ripberger may establish a prima facie case of retaliation by showing that she (1) engaged in statutorily protected activity; (2) met her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity. *Moultrie*, 766 F.3d at 755. Ripberger engaged in statutorily protected activity by helping Orton-Bell file her discrimination complaint and attending her hearings as a silent witness. The parties agree that Ripberger was meeting her employer's expectations and Ripberger has also shown that other IDOC counselors who did not engage in statutorily protected activity were hired back into their positions by

Corizon. Finally, we can assume that Corizon's failure to offer her a position at Pendleton constitutes an adverse job action.

As should be readily apparent by now, Corizon has offered a legitimate non-retaliatory reason for its decision not to hire Ripberger, and nothing in her evidence suggests that Corizon's stated reason—ensuring a seamless transition and maintaining continuity of care with both the offenders and the counselors—is unworthy of belief. Thus, Corizon is entitled to summary judgment on Ripberger's retaliation claim as well.

### III.

As the district court noted, Ripberger was a qualified substance abuse counselor who was the unfortunate victim of a reduced workforce at the Pendleton facility when IDOC privatized its substance abuse counseling program. Regardless of how the evidence is viewed, it is simply insufficient to demonstrate any unlawful motivation behind Corizon's failure to hire her. We thus affirm the judgment of the district court granting summary judgment to Corizon.