NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2015[*]
Decided March 20, 2015

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-2569

| | |
|---|---|
| LARRY G. HARRIS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11-3074 |
| JONATHAN R. WALLS, et al., *Defendants-Appellees.* | Colin Stirling Bruce, *Judge.* |

**O R D E R**

Larry Harris, an Illinois inmate, contends that prison officials disciplined him in retaliation for his earlier lawsuit over soy in his prison diet and for helping other inmates complain about soy in their diets. He appeals from a grant of summary judgment in favor of the prison officials. Because the undisputed evidence compels the conclusion that prison officials disciplined Harris for legitimate reasons regardless of any protected speech, we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

We construe the record in the light most favorable to Harris. *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 873 (7th Cir. 2014). While Harris was incarcerated at the Western Illinois Correctional Center, he sued prison officials in 2007 over excessive soy in his prison food, contending that it exacerbated his thyroid disorder and seriously threatened his health. About two months after Harris began receiving a soy-free diet in February 2009, the health-care unit noticed a spate of at least ten nearly identical (in wording) grievances from prisoners simultaneously complaining about excessive soy in their food and resulting health complications.

After the sudden influx of grievances mimicking Harris's objection to the diet, prison officials—concerned that the grievances were false—investigated whether Harris had violated any prison rules. Lieutenant Steven Ashcraft placed Harris in segregation pending the investigation. According to Harris, as Ashcraft put him in segregation the officer profanely expressed his belief that Harris was provoking inmates to file grievances alleging medical complications from soy: "What is your fucking problem here? These [racial slur for an African-American person][1] had no idea what hypothyroidism was. You had to open your mouth and educate them. Now they are all filing grievances on it." Another officer reminded Harris that he had already been told "to leave the pen alone" and added, "You was warned. This is my joint and you are the fuck out of here smart ass."

During the investigation Ashcraft collected statements about the origin of the grievances. An unidentified inmate had written a letter to a correctional officer asserting that Harris was trying to get a "load of people" to "jump[] on a soy food lawsuit" by writing down symptoms for them to complain about. Ashcraft also received reports from four confidential informants that Harris was encouraging inmates to lie about the effect of prison food on their health. In particular, the informants said, Harris had distributed a letter detailing how to complain about the soy diet, typed grievances for inmates, instructed them on what medical relief to demand from health care to support their grievances, and told one informant that soy was causing the informant's stomach pain. Ashcraft also took a statement from Harris, who denied circulating the letter or filing grievances for other inmates.

---

[1] On summary judgment we must credit the plaintiff's version of events. *See Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 691 (7th Cir. 2014). Racial slurs are never appropriate but if Harris's allegations are true, it is especially appalling for a government official to use this language in the course of his duties.

Ashcraft concluded that Harris had violated prison rules. First, he reported that Harris had lied about his involvement with the grievances. Second, he found that Harris "was attempting to unite other inmates in a concerted effort to file false grievances and make unsupported allegations about health issues and the food at the facility." Ashcraft formally charged Harris with giving false information to employees, ILL. ADMIN. CODE tit. 20, § 504 App. A § 303, operating a business venture, *id*. at App. A § 309, and soliciting or conspiring with others to violate prison rules, *id*. at App. A § 601.

After a hearing, a disciplinary committee found Harris guilty of these charges. At the hearing, Harris conceded that, as a "jailhouse lawyer," he had helped type grievances for his mentally disabled cellmate and for another inmate who requested his help, and he speculated that other inmates must have used one of those grievances as a template. But he insisted that he had done nothing more and surmised that officials were retaliating against him simply because he and other prisoners had filed grievances. The committee also received the results of Ashcraft's investigation reflecting the statements from the informants that Harris had spurred grievances about unsubstantiated health complications from soy. In the end, the committee disbelieved Harris, found him guilty, and disciplined him with three months of segregation, three months of lost telephone and commissary privileges, revocation of three months of good-conduct credit, and a disciplinary transfer. After an administrative appeal, only one month of good-conduct credit was revoked, and that month later was restored because of Harris's "improved conduct."

Invoking 42 U.S.C. § 1983, Harris has sued Ashcraft and others involved in the discipline, alleging that they punished him for exercising his First Amendment right to file his own grievance and lawsuit about soy and to help other inmates file similar grievances. The district court initially thought that Harris's suit was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because any success on his § 1983 claim would upset the decision to revoke his good-conduct credits, *see Edwards v. Balisok*, 520 U.S. 641, 645–46 (1997). But the court allowed Harris's complaint to proceed after his good-conduct credit was restored, *see Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir. 2012); *Dewalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), and the defendants do not challenge that decision.

The court then granted the defendants' motion for summary judgment. The defendants had argued that Harris was disciplined, not because he filed his own grievance or lawsuit, but because he incited other inmates to join his crusade against soy, encouraged them to file false grievances, and then lied about his actions. Harris had replied that no grievances were found to be false and he had not promoted a

"business venture." Therefore, he believed, the defendants must have disciplined him for protected conduct. The district court assumed without deciding that Harris had a protected right to assist other inmates to file truthful grievances. But it concluded that the undisputed evidence did not permit an inference that Harris's protected activity caused the disciplinary actions.

On appeal Harris maintains that he presented a triable case that the defendants punished him in retaliation for First Amendment activity. To survive summary judgment on a First Amendment retaliation claim, Harris needed to present evidence from which a reasonable jury could conclude that (1) he engaged in protected First Amendment activity, (2) he suffered a deprivation that would likely deter future First Amendment activity, and (3) the protected activity caused the deprivation. *See Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The parties focus on the first and third elements.

Like the district court, we can assume that Harris has satisfied the first element. The defendants appropriately concede that Harris has the right under the First Amendment to file his own truthful grievances and federal lawsuits. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005). Furthermore, a prisoner may also help another inmate, otherwise unable to help himself, access the courts. *See Johnson v. Avery*, 393 U.S. 483, 487 (1969) (invalidating prison regulation prohibiting habeas petitioners from getting assistance from jailhouse lawyer). But because it is also "indisputable" that jailhouse lawyers "are sometimes a menace to prison discipline," *id*. at 488, inmates' speech rights on legal matters are not unlimited, *see Shaw v. Murphy*, 532 U.S. 223, 231 (2001) (declining to give prisoner-to-prisoner legal assistance any First Amendment protection "above and beyond the protection normally accorded prisoners' speech"). For example, prisons may prohibit inmates from soliciting other prisoners to unite in an unauthorized cause. *See Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977); *Pilgrim v. Luther*, 571 F.3d 201, 205 (2d Cir. 2009). They may also punish inmates who file frivolous grievances or lawsuits or lie to prison officials. *See Hale v. Scott*, 371 U.S. 917, 919 (7th Cir. 2004). Defendants do not contend that Harris's own lawsuit seeking a soy-free diet is groundless, dishonest, or otherwise unprotected speech. Moreover, Harris has presented evidence that he merely assisted other inmates in filing truthful grievances. Together this evidence creates a basis for reasonably inferring that some of his conduct was protected by the First Amendment.

We will also assume that the defendants resented Harris because of his protected activity, but that does not end the matter. For the defendants have furnished

uncontradicted evidence that, even if they disapproved of Harris's protected activity, he would have been punished anyway for violating legitimate prison rules that prohibit lying to prison employees and soliciting inmates to join an unauthorized venture. *See Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011). A prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason. *Id*. In that case, "the improper motive would have done no work, had no effect, left the world unchanged." *Id*.

The defendants genuinely and undisputedly believed that Harris had solicited inmates to unite in his fight against the prison's soy diet by filing grievances without regard to their truth, lied about it, and should be punished for it. *See Van Den Bosch v. Raemisch*, 658 F.3d 778, 788 (7th Cir. 2011). They grounded their belief in the prison rules (prohibiting solicitation and lying) and the ample evidence that Harris violated them (the corroborating statements of four confidential informants, Harris's own admissions, and the circulated letter describing how to show a medical complication from a soy diet). Harris replies that he should not have been punished unless the grievances actually *were* false, and the defendants have not shown that. But the validity of his discipline does not depend on the falsity of the other grievances; it depends on the sincerity of the defendants' belief that he improperly solicited inmates and then lied to investigators about it. *See Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012). Harris has offered no evidence that rebuts the sincerity of the defendants' belief or their motivation to punish him independent of any antipathy about protected conduct. Even the comments from the two officials who put him in segregation, though they included an unacceptable racial slur, do not help Harris. They show only that the officials, like the disciplinary committee, sincerely believed that Harris was organizing, irrespective of the truth, an improper battle against the prison. Thus, because the prison officials disciplined Harris for legitimate reasons, summary judgment for the defendants was proper.

We conclude with two final observations. First, the disciplinary committee provided Harris with due process: advance written notice of the alleged infractions, an opportunity to present evidence to the committee, and a written statement explaining the evidence and reasoning for the disciplinary action, *see Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974), and the committee's decision was supported by "some evidence," *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see also Grandberry v. Smith*, 754 F.3d 425, 426 (7th Cir. 2014). Second, we reject Harris's argument that the district court abused its discretion in denying his several motions for recruitment of counsel. In

denying his requests, the district court applied the correct legal standard, *see Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc), and reasonably found that, based on the quality of his previous filings and his experience with federal litigation, Harris could adequately litigate the issues presented by his case. Furthermore Harris submitted no evidence to demonstrate that he had attempted to recruit counsel on his own before asking the court for assistance.

AFFIRMED.